**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0346-17T4

PAMELA PLATVOET,

    Plaintiff-Appellant,

v.

CATHERINE MANCINI,

    Defendant-Respondent.

_____

> Argued November 13, 2018 – Decided November 30, 2018
>
> Before Judges Fasciale and Rose.
>
> On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7935-15.
>
> Alan K. Albert argued the cause for appellant (Brandon J. Broderick, attorney; Alan K. Albert, on the brief).
>
> Frank J. Kunzier argued the cause for respondent (Zimmerer, Murray, Conyngham & Kunzier, attorneys; Frank J. Kunzier, of counsel and on the brief; Sidney E. Goldstein, on the brief).

PER CURIAM

In this personal injury case, plaintiff Pamela Platvoet appeals from an August 18, 2017 order denying reconsideration of summary judgment entered in favor of her mother, defendant Catherine Mancini. Before defendant left for vacation, she asked her adult children to cover a pool located in her backyard. Plaintiff – who was thoroughly familiar with the pool configuration – broke her left hand as she fell into the pool while pulling a tarp over it. We conclude that there are no genuine issues of material fact and that defendant is entitled to summary judgment as a matter of law. We therefore affirm.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court . . . ." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We therefore consider the facts in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

The oval-shaped pool is twenty-three feet long and twelve-to-fifteen feet wide. A wooden deck encircles approximately half of the pool, leaving the

remaining area, which is thirty-two inches aboveground, exposed. Plaintiff's brother installed the deck three years before the accident. The entire pool is sixteen inches below ground.

Plaintiff and her fiancé arrived on the day of the accident to put a tarp on the pool. They noticed that a black mesh fence was on the ground near the pool. They stood on opposite sides of the pool, with plaintiff on the deck side and the fiancé on the other, and as plaintiff pulled the tarp towards her, she fell into the pool. Plaintiff was wearing flip flops at the time, and she was standing on the deck side of the pool when the accident occurred.

Plaintiff alleged that a dangerous condition on the property existed, about which defendant failed to warn her. To support those allegations, plaintiff retained a professional engineer, who inspected the property and rendered an expert report. Defendant also retained an engineering expert. The experts rendered conflicting opinions about whether a dangerous condition existed, whether defendant should have warned plaintiff about any danger, and the cause of the accident.

Plaintiff's expert – who had not reviewed any written discovery about how the accident occurred – opined that defendant violated multiple sections of the Town's Property Maintenance Code and the State Uniform Fire Code by failing

A-0346-17T4

to maintain the deck. Based upon a reasonable degree of engineering certainty, he further explained that the condition of the deck deviated from common construction and maintenance practice. The Codes required defendant to keep the deck "in sound condition" and the general area safe and clear of hazards.

Plaintiff's expert opined that the absence of a guard along the deck constituted a dangerous condition on the property. He concluded that defendant failed to inspect and safely maintain the property or warn against the dangerous condition. He also concluded that defendant violated applicable codes. He wrote in his report:

> The code requires that the pool have a fence surrounding the pool. Additionally, the [New Jersey International Residential Code] requires a guard on surface having heights above [thirty] inches. The deck where [plaintiff] fell stood over [thirty-one] inches [plus or minus] above the ground below. The deck should have had a guard installed to provide for protection for anyone using the pool area. The presence of a guard could have prevented the hazardous condition that caused [plaintiff's] fall.
>
> . . . A safe, code compliant fence along the open portion of the deck should have been provided. The exterior of the premises are to be kept in a proper state of repair and maintained free from hazardous conditions.
>
> While warnings are not substitutes for adequate maintenance, the means to have warned of the hazard (i.e.[,] warning signs, fence, no handrail[]) once

discovered, had been readily available by means of a
proper inspection, warning, and scheduled repair.

Defendant's expert concluded that plaintiff caused her fall. He disagreed that a fence, guardrail, or warnings were necessary. He pointed out that a fence around the perimeter of the pool is intended to keep unsupervised children away from the pool. The guardrail around the deck – as required per plaintiff's expert – would have solved nothing because the accident did not occur in the area where plaintiff's expert said the guard should be. And as for warnings, plaintiff had been to the site before the date of the accident and knew about the conditions before she arrived.

On appeal, plaintiff argues that the conflicting expert opinions created genuine issues of fact that precluded summary judgment. She emphasizes that the failure to set up the pool's mesh fence – which her expert said was required to protect against injury – contributed to the accident. Plaintiff maintains that the absence of a guardrail around the deck, pursuant to her expert's opinion, would have provided protection against the accident. And finally, she contends that her mother failed to warn her about dangerous conditions at the site of the accident.

The duty of a landowner to a person who has been injured because of a dangerous condition on private property is based on the status of the person at

A-0346-17T4

the time of the injury.  Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433

(1993).

> An owner or possessor of property owes a higher degree of care to the business invitee because that person has been invited on the premises for purposes of the owner that often are commercial or business related. A lesser degree of care is owed to a social guest or licensee, whose purposes for being on the land may be personal as well as for the owner's benefit.
>
> [Ibid.]

"Only to the invitee or business guest does a landowner owe a duty of reasonable

care to guard against any dangerous conditions on [the] property that the owner

either knows about or should have discovered." Id. at 434.  We consider plaintiff

to be a social guest.

> A social guest is someone invited to . . . her host's premises.  The social guest must accept the premises of . . . her host as . . . she finds them.  In other words, the host has no obligation to make . . . her home safer for . . . her guest than for . . . herself.  The host also is not required to inspect . . . her premises to discover defects that might cause injury to . . . her guest.
>
> If, however, the host knows or has reason to know of some artificial or natural condition on the premises which could pose an unreasonable risk of harm to . . . her guest and that . . . her guest could not be reasonably expected to discover it, the owner . . . owes the social guest a duty to exercise reasonable care to make the condition safe or to give warning to . . . her guest of its presence and of the risk involved.  In other

A-0346-17T4

words, although a social guest is required to accept the premises as the host maintains them, . . . she is entitled to the host's knowledge of dangerous conditions on the premises. On the other hand, where the guest knows or has reason to know of the condition and the risk involved and nevertheless enters or remains on the premises, the host cannot be held liable for the accident.

[Model Jury Charges (Civil), 5.20F(4), "Social Guest – Defined and General Duty Owed" (rev. Dec 2014).]

As to the alleged dangerous conditions on the site – the rolled up mesh fence and no guardrail – there is absolutely no evidence whatsoever demonstrating that either one had anything to do with the accident. The purpose of the fence around the pool is to keep people away from the pool, but plaintiff herself admits that the mesh fence had to be rolled up so that she could tarp the pool. This is not a situation where she fell into the pool because there was no fence. And as to the guardrail, she fell on the opposite side of the pool from where her expert says the guard should have been. Even if we applied the higher degree of care that landowners generally owe to business invitees, we conclude that defendant is entitled to summary judgment.

Importantly, it is undisputed that plaintiff was thoroughly familiar with the pool configuration in her mother's backyard. She had sat at that pool almost every day for three preceding summers. Plaintiff understood that the normal procedure for winterizing the pool was to remove the mesh fencing around the

7

pool, place the tarp over the pool, then put the fencing back up. Plaintiff conceded that her two brothers – who usually winterized the pool in prior years – placed a tarp over the deck furniture, and "moved everything [including a storage box] so they [themselves] could tarp the pool." Plaintiff, however, attempted to place the tarp over the pool with her fiancé because her brothers "never got a chance to tarp the pool."

Thus, she had been familiar with the site, which her brothers cleared for her. There was no need for any warnings – not only because there were no dangerous conditions that had anything to do with the accident – but especially because plaintiff knew of the conditions and the potential risks involved in placing a tarp over the pool. Nevertheless, plaintiff entered or remained in her mother's backyard.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION